IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES C. MAIBEN, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. 12-00080-B |
| CAROLYN W. COLVIN,[1] | * | |
| Commissioner of Social Security, | * | |
| Defendant. | * | |

## ORDER

Plaintiff, James C. Maiben (hereinafter "Plaintiff"), brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq*. On April 17, 2013, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 22). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The parties waived oral argument. (Doc. 21). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  **Procedural History**

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on September 16, 2008. (Tr. 112-17). Plaintiff alleges that he has been disabled since August 10, 2008, due to degenerative disc disease of the cervical spine and mild arthritis of the lumbar spine. (Doc. 13, att. 1 at 1). Plaintiff's applications were denied initially on November 5, 2008, and he timely filed a Request for Hearing before an Administrative Law Judge ("ALJ). (Id. at 50-59, 66-68). On January 21, 2010, Administrative Law Judge Linda J. Helm held an administrative hearing, which was attended by Plaintiff, his attorney, and a vocational expert. (Id. at 30-47). Plaintiff and the vocational provided testimony at the hearing. (Id.). On April 8, 2010, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 18-26). Plaintiff's request for review was denied by the Appeals Council on December 22, 2011. (Id. at 2-8). Thus, the ALJ's decision dated April 8, 2010, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II. **Issues on Appeal**

A. Whether substantial evidence supports the ALJ's RFC assessment?

B. Whether the Appeals Council erred by failing to appropriately review new evidence?

III. **Factual Background**

Plaintiff was born on May 22, 1966, and was forty-three years of age at the time of the administrative hearing. (Tr. 35). Plaintiff testified that he completed high school and last

worked as a waiter/banquet server and a houseman/linen room attendant for Ashbury Hotels. (Id. at 36-37, 46, 167). Plaintiff testified that that he worked for Ashbury Hotels for twenty-one years and that it was the only job that he had ever had. (Id. at 37-38). Plaintiff maintains that he can no longer work because he suffers chronic pain from cervical fusion surgery that he had in 2008. According to Plaintiff, he can stand for only fifteen to twenty minutes at a time and can sit for only twenty minutes at a time. (Id. at 34, 41). He also testified that he has been using a cane since his surgery. (Id. at 36). At the time of the hearing, Plaintiff's medications included Celebrex, Ibuprofen, Cyclobenzaprine, and Neurontin, all of which he was taking for pain.[2] (Id. at 39).

IV. **Analysis**

   A. **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they

---

[2] Celebrex (or Celecoxib) is in a class of NSAIDs called COX-2 inhibitors and is used to relieve pain, tenderness, swelling and stiffness caused by arthritis. See http://www.nlm.nih.gov/ medlineplus/druginfo/meds/a699022.html. Cyclobenzaprine is a muscle relaxant that is also used relieve pain. See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html. Neurontin (or Gabapentin) is used to help control certain types of seizures and also to relieve pain. See http://www.nlm.nih.gov/ medlineplus/druginfo/meds/a694007.html.

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.     Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.[4] 20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment

4

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 10, 2008, the alleged onset date, and that he has the severe impairments of degenerative disc disease of the cervical spine and mild arthritis of the lumbar spine. (Tr. at 20). The ALJ also determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform less than the full range of medium work, with the following limitations: Plaintiff is limited to no more than occasional bending, squatting, crawling, or climbing, and he cannot work around unprotected heights or dangerous moving equipment. (Id. at 21). Plaintiff is able to frequently reach. (Id.). The ALJ also found that Plaintiff's statements concerning the severity and limiting effects of his impairments were not fully credible. (Id. at 24). The ALJ determined that Plaintiff is capable of performing his past relevant work (hereinafter "PRW") as a waiter and linen room attendant, as these jobs do not require the performance of work-related activities precluded by Plaintiff's RFC. (Id. at 25). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

---

which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## 1. Medical Evidence

The relevant evidence of record reflects that on July 22, 2008, Plaintiff sought treatment from Dr. Bendt Petersen at the Orthopaedic Group for complaints of numbness and tingling on the right side of his body, coupled with lower back and lower extremity discomfort that he had been experiencing for about one year. (Id. at 219). Plaintiff reported that he had been using a cane due to occasional imbalance. (Id.). Plaintiff's physical examination was largely normal, except that imbalance was noted. (Id.). Plaintiff was in "no apparent distress," and his overall strength was 5/5. (Id.). Imaging studies showed cervical spondylosis with radiculitis, rule out myelopathy, and lumbar strain with radiculitis. (Id.). Dr. Petersen ordered an MRI of Plaintiff's cervical spine and placed Plaintiff on a Medrol Dosepak. (Id.). On July 29, 2008, the results of the MRI showed moderate to marked degenerative disc changes, including disc narrowing and annular bulge, at C5-6 and C6-7, moderate changes including annular bulge at C4-5, mild changes at C3-4, and no significant changes at C7-T1. (Id. at 218).

On August 5, 2008, Plaintiff returned to Dr. Petersen for a review of the MRI results. Dr. Petersen explained that the MRI of Plaintiff's cervical spine showed significant spondylosis at 4-5, 5-6, and 6-7, severe spinal cord pressure, deformation and stenosis at the 4-5, 5-6 and 6-7 levels. (Id.). Dr. Petersen discussed the implications of ongoing spinal cord pressure and recommended corrective surgery. (Id.).

On August 13, 2008, Dr. Petersen performed an anterior cervical fusion of two to three vertebrae, with excision of intervertebral disk and insertion of interbody spinal fusion device. (Id. at 210-11). The treatment notes reflect that there were no complications, and Plaintiff tolerated the procedure well. (Id. at 211-12). He was discharged home from the hospital after two days, following an "unremarkable" course and was instructed to return for follow up in one

6

week. (Id. at 211).

On August 22, 2008, one week after his surgery, Plaintiff returned to Dr. Petersen for a follow up examination. (Id. at 217). Dr. Petersen noted that Plaintiff was "doing nicely," that he had a decline in overall radicular symptoms, that his gait was cane supported but fluid and smooth, and that his incision was well healed. (Id.). Imaging studies of his cervical spine further showed nice graft and hardware placement. (Id.). Dr. Petersen ordered physical therapy for gait training and strengthening. (Id.). He also documented that Plaintiff was going to apply for short-term disability with social security, which Dr. Petersen noted was "completely reasonable." (Id.). Dr. Petersen instructed Plaintiff to follow up in two weeks. (Id.).

Plaintiff next saw Dr. Petersen on September 8, 2008, which was three weeks post surgery. (Id. at 216). Dr. Petersen noted "[s]low progression but progression nonetheless;" overall decrease in upper extremity symptoms and neck symptoms; strength in "good order" and improving slowly; well healed wound; and nice restoration of lordosis.[5] (Id.). Dr. Petersen continued Plaintiff's physical therapy, refilled Plaintiff's prescriptions for Lortab and Soma, and instructed him to return in three weeks. (Id. at 112-17).

On October 3, 2008, seven weeks post surgery, Plaintiff saw Dr. Petersen, who noted "[s]low progress with therapy" but "[p]rogress nonetheless;" incision is well healed; strength is in good order; and gait remains cane supported but fluid. (Id. at 216). Dr. Petersen instructed Plaintiff to continue therapy and return in four weeks.[6] (Id.). He also gave Plaintiff a letter for

---

[5] Lordosis is an increased curving of the spine. See http://www.nlm.nih.gov/medlineplus/ency/article/003278.htm.

[6] On October 7 and October 30, 2008, Dr. Petersen refilled Plaintiff's prescriptions for Lortab and Soma. (Tr. at 216, 222).

his employer stating that Plaintiff is "unable to work at this time" and that he is to "remain off work until rechecked [on] 11-12-08." [7] (Id. at 229).

On November 12, 2008, three months after his surgery, Plaintiff saw Dr. Petersen, who noted that Plaintiff was "[s]till [having] good days and bad days," that he was "[i]mproved on the whole over the last visit," that his incision was well healed, that his gait remained cane supported but fluid, and that his x-rays showed "nice progression of arthrodesis."[8] (Id. at 222). Dr. Petersen instructed Plaintiff to continue physical therapy and to follow up in one month. (Id.). Dr. Petersen noted that he was "keep[ing] [Plaintiff] out of his current employment which involves lifting, pulling, etc." but that "[s]edentary duty is a possibility for him." (Id.). Dr. Petersen completed a form stating that Plaintiff "is unable to work at this time," and that his "[e]stimated date of return" is "approx[imately] 6 wks." (Id. at 229). Dr. Petersen further commented that, at that time, Plaintiff was to engage in "no lifting/pulling" and was limited to "sedentary duty only." (Id.). Dr. Petersen's records also reflect that he refilled Plaintiff's prescription for Lortab and Soma on November 21, 2008, and December 9, 2008, that he refilled Plaintiff's prescriptions for Darvocet and Flexeril on January 8, 2009, and that he prescribed two additional weeks of physical therapy on November 24, 2008. (Id. at 221-22).

---

[7] On November 4, 2008, a State Agency disability specialist reviewed Plaintiff's medical records and noted his diagnoses of degenerative disc disease, spondylosis throughout the C-spine, and cervical fusion. (Id. at 178). She opined that Plaintiff could occasionally lift or carry up to fifty pounds, could frequently lift or carry up to twenty-five pounds, could stand, walk, or sit for about six hours in an eight-hour work day, could push or pull without limitation, and could frequently climb, balance, stoop, kneel, crouch, and crawl. (Id. at 178-79). She also concluded that Plaintiff has no manipulative, visual, communicative, or environmental limitations. (Id. at 180-81).

[8] Arthrodesis is another term for spinal fusion. See http://www.nlm.nih.gov/medlineplus/ency/article/002968.htm.

On February 12, 2009, six months after Plaintiff's surgery, Dr. Petersen examined Plaintiff and noted that he was "seeing subtle improvement in [Plaintiff's] ambulation" and "ongoing subtle improvement in his upper extremity symptoms;" that the "exam shows cane supported gait still but his strength is physiologic;" and that "[r]adiographs show solid arthrodesis at all operative levels." (Id. at 221). Dr. Petersen noted that Plaintiff was asking for a return to work slip and that he would provide that to him.[9] (Id.). Dr. Petersen instructed Plaintiff to follow up in three months; however, the record does not contain any additional treatment records from Dr. Petersen. (Id.).

On June 11, 2009, Plaintiff presented to the Franklin Primary Health Center (the "Franklin Clinic") and reported neck pain and pain on the left side of his body, for which he was taking Lortab and muscle relaxers. (Id. at 225). Plaintiff rated his pain as a six out of ten on the pain scale, and he rated his overall health as "good." (Id.). His physical examination was largely normal. (Id.). Plaintiff was diagnosed with chronic pain and status post cervical laminectomy with fusion and was prescribed Ibuprofen 800.[10] (Id.).

On August 5, 2009, Plaintiff returned to the Franklin Clinic, and it appears from the largely illegible treatment notes that Plaintiff was diagnosed with cervical disc disease for which he was prescribed Ibuprofen and instructed to return in three months. (Id. at 223-24). Plaintiff returned to the Franklin Clinic on November 9, 2009, and reported arm, hand, and neck pain, which he rated as a ten out of ten on the pain scale. (Id. at 227). Plaintiff's treatment notes

---

[9] The Court has been unable to locate in the record the return to work slip referenced by Dr. Petersen in his February 12, 2009, treatment notes.

[10] The record also reflects that there was some discussion of referral to a pain clinic. (Tr. 226). Plaintiff testified at his hearing on January 21, 2010, that the referral was never made. (Id. at 39).

9

reflect that his cervical spine was tender to palpation at C4-6. (Id.). Plaintiff was diagnosed with "chronic pain cervical spine" and prescribed Celebrex and Flexeril. (Id. at 228). He was also diagnosed with "long time chronic NSAID use" and instructed to return in two months.[11] (Id.).

The following month, on December 22, 2009, Dr. Marion Carroll at the Franklin Clinic completed a Motor Vehicle Application for Disability Access Parking Privileges, stating that Plaintiff "[c]annot walk two hundred feet without stopping to rest" and that Plaintiff is "[s]everely limited in [his] ability to walk due to an arthritic, neurological, or orthopedic condition." (Id. at 230). Dr. Carroll further opined that Plaintiff's disability was "long-term." (Id.).

On January 21, 2010, Plaintiff attended an administrative hearing at which his attorney requested a consultative physical examination. (Id. at 41). On March 16, 2010, the Agency referred Plaintiff to Dr. William Crotwell, for a consultative physical examination. (Id. at 232). Dr. Crotwell noted that Plaintiff had undergone surgery with Dr. Petersen in August of 2008 consisting of a cervical fusion at C4-5, 6-7 but had "[n]o major treatment with [Dr. Petersen] since then." Dr. Crotwell noted that Dr. Carroll at the Franklin Clinic has followed Plaintiff. (Id.).

Plaintiff reported to Dr. Crotwell that he was experiencing posterior cervical spine pain with decreased range of motion and that he was unable to turn from side to side. (Id.). Plaintiff stated that his pain consisted of 50% neck pain and 50% bilateral arm pain. (Id.). He also described numbness and tingling down his left arm and the left side of his body, back pain across

---

[11] On November 19, 2009, Plaintiff listed his medications as Celebrex, Ibuprofen, and Cyclobenzaprine. (Tr. at 200).

10

his lower back and along his entire spine, and muscle spasms, at times, increased with walking or standing. (Id. at 233).

Upon physical examination, Dr. Crotwell found that Plaintiff "was able to bend, flex 90 degrees and bring his leg up 90 degrees and remove his socks without any difficulty." (Id.). In addition, Plaintiff's toe/heel walk was "good but timid," and forward flexion was only "about 45 to 50 degrees and [Plaintiff] would do some strange, abnormal jerking, like spasms but he was just jerking his body voluntarily." (Id.). Dr. Crotwell continued that "[e]xtension was 20 with no spasms, but would still continue with the jerking. This is very inconsistent since he was able to flex and bend removing his socks without difficulty." (Id.). Dr. Crotwell further documented that when he tested Plaintiff's reflexes in the patella and Achilles, "[a]gain [Plaintiff] would do jerking when tapped with the reflex; very strange, bizarre voluntary jerking." (Id.).

Dr. Crotwell noted that Plaintiff's thoracic spine had some tenderness, generalized up and down, but that "[s]ensory was normal;" "[m]otor is 5/5;" straight leg raise was 90 degrees sitting "with no pain;" "[h]ip rotation was normal;" straight leg raise lying was 80 degrees right and left "severely increased with planar flexion and no change with dorsiflexion; again very inconsistent." (Id.). With respect to Plaintiff's upper extremities, Dr. Crotwell found that forward flexion was "only about 70, extension about 20, lateral motion only 40." (Id.). In addition, Dr. Crotwell stated that when he tested Plaintiff's reflexes in his biceps, triceps and brachioradialis, Plaintiff "was still acting bizarre." (Id.). With respect to his sensory examination, Dr. Crotwell noted that "[s]ensory was decreased just on the palmar side of the left hand," but that the arm and leg had normal sensation, that "motor was 5/5," that his grip strength was good and that he had good intrinsics and good thenars. (Id.). X-rays showed cervical spine fusion at C4-5-6; the thoracic spine was negative; and the lumbar spine showed mild arthritis.

(Id.). The impression was "cervical degenerative disc disease with fusion C4-7" and "mild arthritis of the lumbar spine." (Id.). Dr. Crotwell opined, "I think this patient could carry out light work and he could definitely carry out sedentary. I think he could work an eight hour day. His actions and all were very bizarre in his attempt to symptom magnify his problems. " (Id. at 234).

Dr. Crotwell also completed a Physical Capacities Evaluation. He opined that Plaintiff can sit for one hour at a time for a total of eight hours a day, can stand for one hour at a time for a total of six hours a day, and can walk for one hour at a time for a total of four hours a day. (Id. at 235). In addition, Dr. Crotwell opined that Plaintiff can continuously lift ten pounds, can frequently lift twenty-five pounds, and can occasionally lift fifty pounds. (Id.). He further opined that Plaintiff can continuously carry five pounds, can frequently carry twenty pounds, and can occasionally carry twenty-five pounds, that he is capable of simple grasping, pushing, pulling, and fine manipulation with both hands and pushing and pulling of leg controls with both feet, and that he can occasionally bend, squat, crawl, and climb and can reach frequently. (Id.). Dr. Crotwell opined that Plaintiff can never work around unprotected heights and has a moderate restriction in working around moving machinery, a mild restriction in driving automotive equipment, and no restriction in exposure to marked changes in temperature or exposure to dust, fumes. (Id.). Again, Dr. Crotwell opined that Plaintiff "could perform light manual labor and sedentary work." (Id.).

On April 8, 2010, the ALJ issued his decision in this case finding that Plaintiff is not disabled. (Id. at 18). Following the ALJ's decision, Plaintiff's counsel presented additional evidence to the Appeals Council. Included in the submission were Plaintiff's treatment records from Springhill Medical Center related to an emergency room visit in December 2006 for back

pain (id. at 239-40); records from the Orthopaedic Group related to Plaintiff's treatment and physical therapy in August 2008, some of which is duplicative of evidence in the record before the ALJ (id. at 244-47); records from the Franklin Clinic related to treatment and physical therapy from June 2010 through October 2011, including a Physical Capacities Evaluation and Clinical Assessment of Pain completed by nurse practitioner Holli Burden (id. at 258-75, 294-98); and treatment records from Dr. James Lawrence at the Franklin Clinic dated January 2011 through May 2011 (id. at 279-81).

## 2. Issues.

**Whether substantial evidence supports the ALJ's RFC assessment?**

In his brief, Plaintiff argues that the ALJ's finding that he can perform less than a full range of medium work is not supported by substantial evidence because the RFC did not include a sit/stand option. (Doc. 13 at 3). Specifically, Plaintiff contends that consultative examining physician, Dr. William Crotwell examined him and determined that he can sit, stand, and walk for only one hour "at one time"; yet, this significant limitation is not included in the ALJ's RFC, nor does the ALJ provide any explanation for omitting the limitation. The Commissioner counters that the ALJ's decision is fully supported by substantial medical evidence and that the substantial medical evidence does not support a sit/stand option in this case.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an important part of steps four and five of the disability determination process. In reaching a decision the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Absent good cause, the ALJ must give substantial or considerable weight to the opinions of treating or examining physicians. Id. A non-examining physician's opinion is entitled to little

weight if it is contrary to the treating or examining physician's findings unless good cause is found. See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records". Winschel, 631 F.3d at 1179 (quotation marks omitted). When the ALJ disregards a treating [or examining] physician's opinion, he must clearly articulate the reasons for doing so. Id.

As noted *supra,* Dr. Crotwell prepared a Physical Capacities Evaluation wherein he opined that Plaintiff can sit for one hour at a time for a total of 8 hours a day, stand for one hour at a time for a total of six hours a day, walk for one hour at a time for a total of four hours a day, continuously lift ten pounds, frequently lift twenty-five pounds, occasionally lift fifty pounds, continuously carry five pounds, frequently carry twenty pounds, and occasionally carry twenty-five pounds. (Tr. 235). In addition, Dr. Crotwell opined that Plaintiff is capable of simple grasping, pushing, pulling, and fine manipulation with both hands, pushing and pulling of leg controls with both feet, occasional bending, squatting, crawling, and climbing and frequent reaching. (Id.). Dr. Crotwell further opined that Plaintiff cannot work around unprotected heights, that he has a moderate restriction in working around moving machinery, that he has a mild restriction in driving automotive equipment, and that he has no restriction in exposure to marked changes in temperature or exposure to dust, fumes. (Id.). Dr. Crotwell also opined that Plaintiff "could perform light manual labor and sedentary work." (Id.).

In concluding that Plaintiff retains the RFC to perform less than the full range of medium work and is limited to no more than occasional bending, squatting, crawling or climbing, and no work around unprotected heights or dangerous moving equipment, the ALJ cited extensively to

Dr. Crotwell's assessment, and noted that "Dr. Crotwell based his opinion on objective findings from examination along with the claimant's medical record. The majority of Dr. Crotwell's assessment is given great weight and has been incorporated into the RFC; however, the evidence as a whole directs a finding that the claimant is able to lift and carry up to fifty pounds occasionally, and twenty-five pounds frequently." (Id. at 24). The ALJ also noted with approval Dr. Crotwell's finding that Plaintiff can sit for a total of eight hours, that he can stand for a total of six hours, and that he can walk for a total of four hours in an eight hour day. The ALJ did not however make any reference to Dr. Crotwell's finding that Plaintiff can only sit, stand or walk one hour at a time. This finding means that Plaintiff would need to change positions hourly; however, the ALJ offered no reason for not including this substantial limitation in Plaintiff's RFC. Although the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to "sufficiently explain[ ] the weight he has given to obviously probative exhibits." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ also must "'clearly articulate the reasons for giving less weight' to a treating [or consultative] physician's opinion." Watkins v. Comm'r, 457 Fed. App'x 868 (11th Cir. 2012) (per curiam) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (ALJ erred because he did not offer any explanation for his apparent decision to disregard the doctor's sit/stand limitation). In this case where the ALJ accorded considerable weight to Dr. Crotwell's opinions, including his finding regarding the total amount of time in which Plaintiff could stand, sit and walk, but failed to address Dr. Crotwell's opinion that Plaintiff would need to alternate positions every hour, and failed to offer any explanation for not including this substantial limitation, this case must be reversed and remanded[12]. On remand, the ALJ shall specifically address Dr. Crotwell's opinion

---

[12] Because this case is being reversed and remanded, the undersigned has not addressed the

that Plaintiff would need to alternate positions every hour. If he rejects said opinion, he must set forth his reasons for doing so.

## V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **REVERSED** and **REMANDED.**

**DONE** this **30th** day of **September, 2013.**

/s/ **SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

remaining issues raised in Plaintiff's brief.